UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL GORBE,
EDWARD SHARGABIAN, and
TYRON RUCKER,

        Plaintiffs,                        No. 17-11782

v.                                      Honorable Nancy G. Edmunds

THE CITY OF LATHRUP VILLAGE,
WILLIAM ARMSTRONG, and
SCOTT MCKEE,

        Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [102]**

This is an employment discrimination case brought by Plaintiffs Michael Gorbe,

Edward Shargabian, and Tyron Rucker against the City of Lathrup Village, Chief of

Police Scott McKee, and former Chief William Armstrong, alleging discrimination and

retaliation under the Age Discrimination in Employment Act ("ADEA"), Title VII of the

Civil Rights Act, the Americans with Disabilities Act ("ADA"), and the First Amendment

of the United States Constitution.[1]  The matter is before the Court on Defendants'

motion for summary judgment.[2]  (ECF No. 102.)  Plaintiffs oppose the motion.  (ECF No.

_____

[1] This case was reassigned from the Honorable Avern Cohn to the Honorable Nancy G. Edmunds pursuant to Administrative Order 20-ao-003 on January 2, 2020.

[2] Defendants previously moved for summary judgment when this case was still assigned to Judge Cohn.  (ECF Nos. 62, 63, 64.)  The Court, however, denied Defendants' motions without prejudice for the sake of judicial convenience, finding the parties had failed to conform to the Court's motion practice guidelines.  (ECF No. 87.) The Court also dismissed Plaintiff's state law claims without prejudice, declining to exercise supplemental jurisdiction over those claims.  (ECF No. 86.)

109.)  Defendants have filed a reply.  (ECF No. 111.)  The Court finds that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), Defendants' motion will be decided on the briefs and without oral argument.  For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Defendants' motion for summary judgment.

## I.    Background

Plaintiffs were all employees of the Lathrup Village Police Department during the time the alleged discrimination and retaliation took place.  Defendant Armstrong is African-American and was the Chief of Police from 2007 until his retirement on December 16, 2016.  Defendant McKee is Caucasian and was initially a lieutenant during the relevant time period.  He was named Interim Chief of Police upon Defendant Armstrong's retirement.  Defendant McKee became Chief of Police in September 2017 and continues to serve in that role.

Plaintiffs have stated that before his retirement, Defendant Armstrong "was hardly ever around" and spent only a few hours of his time at the department due to having another job.  (ECF No. 109-2, PgID 4302; ECF No. 109-37, PgID 5094.)  Thus, according to Plaintiffs, Defendant McKee significantly influenced decision-making even before serving in the role of Chief.  Defendant McKee has acknowledged that he was "in charge" in Defendant Armstrong's absence.  (ECF No. 109-15, PgID 4758.)

### A.    Plaintiff Gorbe

Plaintiff Gorbe was terminated from his employment as a police officer in Lathrup Village in December 2016 at the age of 46 years old.

On March 23, 2016, Plaintiff Gorbe was suspended following a confrontation with Defendant McKee.  He was due to return to work on March 26 but instead submitted a note indicating that he was under the care of his primary care physician for "acute stress reaction related to work."  (ECF No. 102-6.)  In a letter dated March 25, 2016, Defendant Armstrong acknowledged receipt of this note and stated, "I am removing you from being suspended with pay and putting you on sick leave."  (ECF No. 102-7.)  In a second letter sent to Plaintiff Gorbe dated March 31, 2016, Defendant Armstrong stated:

> I am in receipt your doctor's note which indicates you cannot work for the next four (4) weeks.  The City requires a diagnosis from your doctor with a reason you are off of work.  If you require additional time off beyond the four (4) weeks, your doctor will need to provide the city with a prognosis for your return, and a diagnosis of the medical reason you need to be off of work.

(ECF No. 109-30, PgID 5008.)

In October 2016, at the request of Lathrup Village and pursuant to a collective bargaining agreement, Gorbe underwent a fitness for duty examination after which the psychologist concluded that he was "fit for duty since he is not now experiencing any psychological/psychiatric disorder."  (ECF No. 102-9.)  On November 17, 2016, Defendant Armstrong sent Gorbe correspondence stating, "[w]e have received the results of your fitness for duty evaluation from [the psychologist] and she has indicated you are fit to return to work.  You are hereby ordered to return to work on Monday, November 21, 2016 . . . ."  (ECF No. 102-12.)  The letter further stated that "[i]f for any reason you do not show up for your shift on 11/21/16 we will infer from your absence that you have resigned your position with the Lathrup Village Police Department."  (*Id.*)  Plaintiff Gorbe has testified that he was told by his union representative that Defendant Armstrong stated that he did not actually have to worry about showing up.  Plaintiff

Gorbe did not return to work on that day.  Defendant Armstrong then turned the matter

over to the City Administrator Andrew Potter, who in turn informed Gorbe that he was

being charged with failure to return to work and that a Loudermill (pre-termination)

hearing was scheduled for November 29, 2016.  (ECF No. 102-14.)  At the hearing,

Gorbe presented a doctor's note that stated that he was "unable to work until further

notice due to Post-Traumatic Stress Disorder, Psychophysiological insomnia and

Elevated Blood Pressure without diagnosis of Hypertension."  (ECF No. 102-15.)

After the hearing, City Administrator Potter sent Gorbe a letter staying in relevant

part the following:

> On Thursday, March 24, 2016, you voluntarily without department approval removed yourself form the duties as a police officer for the City of Lathrup Village Police Department.  Since that date, you have had the opportunity at the city's expense to be evaluated as to your mental fitness for duty.  On Friday, November 11, 2016, the City of Lathrup Village received information from Psychologist Dr. Linda K. Forsbert indicating you are mentally fit for duty as a police officer.
> On Thursday, November 17, 2016, Lathrup Village Police Chief William Armstrong sent you a letter ordering you back to work with a report date of Monday, November 21, 2016 . . . .  On Monday, November 21, 2016 you failed to report for duty as ordered offering no explanation as to your absence.
> On Wednesday, November 23, 2016 . . . you again voluntarily refused to report for duty . . . .
> On Tuesday, November 29, 2016 you appeared for the Loudermill Hearing with [your union representatives].  At that hearing, you offered Family Medicine practitioner Dr. Taha Alrahomi's note stating you are unable to work "until further notice due to Post-Traumatic Stress Disorder."
> Since the Thursday March 24, 2016 date, the City of Lathrup Village has been patient with regard to your voluntary absence from duty as a police officer.  Your refusal to report for duty the city can only conclude you have no immediate plans to return to work.  Because you have not returned to work as scheduled and your doctor's note provides no reasonable likelihood that you will return to work on a timely basis, the city has no alternative but to terminate your employment effective December 5, 2016.

(ECF No. 102-16, PgID 3676.)

Plaintiff Gorbe then filed a union grievance regarding his termination, which was also handled by City Administrator Potter.  The grievance was denied, in part, because "it was unreasonable to grant a further extension of the leave of absence for an indefinite period of time, given the burden Officer Gorbe's absence placed on the operations of the Police Department."  (ECF No. 102-17.)

Throughout 2016, Plaintiff Gorbe lodged several complaints regarding the way he was treated and other grievances he had concerning the police department.  More specifically, on April 18, 2016, Plaintiff Gorbe sent a 26 page email to then City Administrator Matthew Baumgarten complaining about mistreatment from McKee.  (ECF No. 109-25.)  On May 6, 2016, he sent another email to city administration asserting, in part, his belief that he had been subject to age discrimination.  (ECF No. 109-22.)  In July 2016, Gorbe filed an EEOC charge, alleging he was disciplined and suspended due to age discrimination.  (ECF No. 26-2.)  On September 5, 2016 and October 12, 2016, Plaintiff Gorbe sent lengthy emails to all members of the city council—one of which was entitled "LIES, RETALIATION, DISCRIMINATION AT LATHRUP VILLAGE POLICE DEPARTMENT" and the other "MALFEASANCE IN OFFICE – POSSIBLE FELONY."  (ECF Nos. 109-33, 109-34.)  And after he was terminated, Gorbe completed an EEOC intake questionnaire indicating his belief that his termination was an act of age and disability discrimination.  (ECF No. 109-26.)  He also filed a second EEOC charge, alleging he was terminated in retaliation for filing his first EEOC charge.  (ECF No. 26-3.)

Defendants argue that Plaintiff Gorbe simply did not want to work at Lathrup Village and point to his statement that he had "a personality conflict with the lieutenant."

(ECF No. 102-10, PgID 3523.)  Plaintiff Gorbe sees matters differently and alleges his termination was unlawful age discrimination and retaliation, disability discrimination, and First Amendment retaliation.

B.   **Plaintiff Shargabian**

Plaintiff Shargabian was hired as a police clerk for Lathrup Village in May 2015. At the time, he was 45 years old.  Shargabian was also a member of the Reserve Officer police force for Lathrup Village since 2007.

In December 2016, all members of the Reserve Officer police force were ordered to complete a background packet, which was due on January 15, 2017.  (ECF No. 102-26.)  On January 26, 2017, Plaintiff signed a letter, which provided an extension of time to complete the packet until February 10, 2017.  (ECF No. 102-28.)  The letter stated that "[f]ailure to comply with this order could result in sanctions up to and including termination."  (*Id.*)  Plaintiff eventually submitted the application, but some information was missing.  Plaintiff acknowledged that the packet was not 100% complete but believed that Defendants had access to any missing information.  On February 10, 2017, Defendant McKee informed Shargabian that his employment had been terminated because of the failure to complete the packet as directed, despite numerous opportunities to do so.

Plaintiff Shargabian testified that he believes he was fired for being friends with Plaintiffs Gorbe and Rucker and questioned the need for the background packet in the first place.  In March 2017, Shargabian emailed members of the Lathrup Village City Council, accusing Defendant McKee of being a liar, making up a false reason to fire him, and targeting and harassing employees and police officers.  (ECF No. 102-29.)

Plaintiff Shargabian brings age discrimination and First Amendment and Title VII retaliation claims.

### C.    Plaintiff Rucker

Plaintiff Rucker was hired as a full-time police officer in Lathrup Village in February 2009.  He was forty years old at the time.  Plaintiff Rucker is African-American.

Plaintiff Rucker was terminated from his employment in July 2015.  An arbitrator, however, reinstated his employment and he returned to work in April 2016.  The arbitrator found that Plaintiff Rucker had neglected his duty by failing to conduct a thorough search of the premises when responding to a burglary alarm but because his most severe penalty up until that time had been a one day suspension, termination was not warranted.  (ECF No. 102-31.)  The arbitrator also found that evidence did not support Defendant McKee's testimony that Plaintiff Rucker had lied to him twice, "a circumstance which severely undermined the objectivity of the investigation and raises questions regarding the Department's intent to discharge."  (ECF No. 109-4.)

Prior to his termination, Defendants posted the availability of two sergeant positions to be given to the top two officers scoring highest in testing.  Plaintiff Rucker had taken the written test for promotion to sergeant.  He took the oral portion of the examination after his reinstatement.  His combined score was 79.95, which made him eligible for consideration for promotion.  However, he was not promoted.  Defendants aver that this was because there was no longer a sergeant position available at the time due to budgetary constraints.  Plaintiff's position is that this reason was made up as an excuse to deny him the promotion.  The only other officer who had scored above 70, Officer Zang, is Caucasian and had been promoted.

In July 2017, following an incident in which Plaintiff Rucker did not report to work, he was suspended for three days. (ECF No. 102-35, PgID 4107.) And in August 2017, Plaintiff appeared for a competency hearing along with a union representative and Defendant McKee to discuss certain incidents that had taken place. (ECF No. 102-36.) At the hearing, it was recommended that Plaintiff Rucker undergo additional training. On October 16, 2017, following an incident during which Plaintiff Rucker had allegedly failed to search the interior of a residence after responding to an alarm, Plaintiff was ordered to serve a fifteen-day suspension. (ECF No. 102-39.) On the day he was scheduled to return to work, November 13, 2017, Plaintiff Rucker sent a letter stating the following: "As a result of constantly being unfairly targeted and harassed by Management of the Lathrup Village Police Department and City Management, which has adversely affected my health, I am resigning from the Lathrup Village Police Department effective November 20, 2017."[3] (ECF No. 102-40.) Plaintiff Rucker brings race discrimination and retaliation and age discrimination claims.

## II.    Summary Judgment Standard

Summary judgment under Federal Rule of Civil Procedure 56(a) is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When reviewing the record, "'the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor.'" *United States S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (quoting *Tysinger v. Police Dep't of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). Furthermore, the "'substantive law will identify which facts are

---

[3] This lawsuit had already been filed and was pending at the time.

material,' and 'summary judgment will not lie if the dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* at 327 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden "of establishing the 'absence of evidence to support the nonmoving party's case.'" *Spurlock v. Whitley*, 79 F. App'x 837, 839 (6th Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "Once the moving party has met its burden, the nonmoving party 'must present affirmative evidence on critical issues sufficient to allow a jury to return a verdict in its favor.'" *Id.* at 839 (quoting *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 403 (6th Cir. 1992)).

## III.   Analysis

### A.   Legal Framework

#### 1.   Discrimination

The ADEA prohibits discrimination against an employee "because of" his age. 29 U.S.C. § 623(a)(1). Title VII makes it unlawful for an employer to discriminate against an employee on the basis of his race. 42 U.S.C. § 2000e-2(a)(1). And the ADA prohibits an employer from discrimination on the basis of disability. 42 U.S.C. § 12112(a).

Discrimination claims are analyzed under different frameworks depending on whether the plaintiff relies on direct or indirect evidence of discrimination. *See Scheick v. Tecumseh Pub. Schools*, 766 F.3d 523, 529 (6th Cir. 2014) (ADEA); *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003) (Title VII); *Ferrari v. Ford Motor Co.*, 826 F.3d 885, 891-92 (6th Cir. 2016) (ADA). For Title VII cases, after an employee has

presented direct evidence of an improper motive, the burden shifts to the employer to prove that it would have undertaken the same adverse employment action absent the impermissible motivation.  *Johnson*, 319 F.3d at 865.  For ADA cases, once the employee establishes that he or she is disabled and otherwise qualified for the position despite the disability and there is direct evidence of disability discrimination, the burden shifts to the employer to prove that a challenged job criterion is essential or that a proposed accommodation will impose an undue hardship upon the employer.  *Ferrari*, 826 F.3d at 891.  Under the ADEA, however, "it is not sufficient for the plaintiff to show that age was a motivating factor in the adverse action; rather, the ADEA's 'because of' language requires that a plaintiff 'prove . . . that age was the but-for cause of the challenged employer decision.'"  *Scheick*, 766 F.3d at 529 (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009)).  Therefore, the burden of persuasion does not shift to the employer in direct evidence cases under the ADEA.  *Id.*

When there is no direct evidence of discrimination, the claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  *See Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 264 n.2 (6th Cir. 2010) (ADEA); *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009) (Title VII); *Ferrari*, 826 F.3d at 891-92 (ADA).  The plaintiff must first establish a prima facie case of discrimination by showing that (1) he is a member of a protected class (for purposes of the ADEA, over the age of 40), (2) he was subject to an adverse employment decision, (3) he was qualified for the position, and (4) he was replaced by someone outside the protected class (for purposes of the ADEA, someone "substantially younger" than him) or treated differently than a similarly situated

employee outside his protected class.  *See McDonnell Douglas*, 411 U.S. at 802;

*O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 313 (1996).  The burden of

proof then shifts to the employer to articulate a legitimate, non-discriminatory reason for

its actions.  *McDonnell Douglas*, 411 U.S. at 802.  Once the employer articulates such a

reason, the burden of proof returns to the plaintiff to rebut the proffered reason by

showing it was a pretext for discrimination.  *Id.* at 804.  A plaintiff may show pretext by

demonstrating that the proffered reason 1) had no basis in fact, 2) did not actually

motivate the adverse action, or 3) was insufficient to warrant the action.  *Chen*, 580 F.3d

at 400.  To show pretext, plaintiff must demonstrate both that the proffered legitimate,

non-discriminatory reason was false, and that unlawful discrimination was the real

reason for the adverse act.  *See White v. Telcom Credit Union*, 874 F. Supp. 2d 690,

707 (E.D. Mich. 2012).

## 2.    Retaliation

Under the ADEA's retaliation provision, it is unlawful for an employer to

discriminate against any of its employees because that employee has opposed any

practice made unlawful by the ADEA or because that employee has "made a charge,

testified, assisted, or participated in any manner in an investigation, proceeding, or

litigation under this Act."  29 U.S.C. § 623(d).  Title VII and the ADA have similar

provisions.  42 U.S.C. § 2000e-3(a); 42 U.S.C. § 12203(a).  And the First Amendment of

the United States Constitution "prohibits retaliation by a public employer against an

employee on the basis of certain instances of protected speech by the employee."  *See*

*Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250, 255 (6th Cir. 2006).

Like discrimination claims, retaliation claims under the ADEA, Title VII, and ADA are analyzed under two different frameworks depending on whether the plaintiff relies on direct or indirect evidence of retaliation.  When there is no direct evidence of retaliation, a plaintiff's retaliation claims are analyzed under the burden-shifting framework articulated in *McDonnell Douglas*, 411 U.S. at 802-04.  The plaintiff must first establish his prima facie case of retaliation by proving 1) he engaged in protected activity, 2) the employer knew he engaged in protected activity, 3) an adverse employment action was subsequently taken against him, and 4) there was a causal connection between the protected activity and the adverse employment action.  *See Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 591 (6th Cir. 2007) (ADEA); *Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (Title VII); *Penny v. United Parcel Serv.*, 128 F.3d 408, 417 (6th Cir. 1997) (ADA).  Once the plaintiff has established his prima facie case, the burden of proof then shifts to the employer to articulate a legitimate, non-retaliatory reason for its actions.  *McDonnell Douglas*, 411 U.S. at 802.  Once the employer articulates such a reason, the burden of proof returns to the plaintiff to rebut the proffered reason by showing it was pretextual.  *Id.* at 804.

In order to establish a claim of First Amendment retaliation, a plaintiff must prove 1) he engaged in constitutionally protected speech or conduct; 2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by his protected conduct. *Scarbrough*, 470 F.3d at 255.  Once the plaintiff has established a prima facie case, the burden of production shifts back to the defendants to show that they would have taken

the same action in the absence of the protected activity.  *Vereecke v. Huron Valley Sch.*

*Dist.*, 609 F.3d 392, 400 (6th Cir. 2010).

### B.    Purported Direct Evidence of Age Discrimination

All three plaintiffs bring claims of age discrimination.  They argue they have direct

evidence of age discrimination.  For instance, Plaintiff Gorbe testified that he heard

Defendant McKee say that he was going to "bring in [his own] new, young fresh crew

that [he] can control and mold" several times.  (ECF No. 109-3, PgID 4323.)  One of

those times was in relation to an incident that took place in August 2014 during which

Plaintiff Rucker drove a car into standing water and was later disciplined.  (ECF No.

109-14, PgID 4664.)  Plaintiff Shargabian recalls Defendant McKee stating that he was

going to hire "only young White male applicants fresh out of the academy."  (ECF No.

109-2, PgID 4300.)  And Plaintiff Rucker testified regarding hearing McKee make

references to bringing in younger officers several times.  (ECF No. 109-10, PgID 4604.)

Plaintiffs also assert that the City's 2017 budget indicated a desire to hire younger

officers.  That budget stated, in relevant part, as follows:

> The FY 2017-2018 Budget is reflective of previous budgets; that being said,
> it should be noted the Police Department is down by three full time police
> officers as of May 3, 2017 (one Police Chief and two Road Patrol Officers).
> As with other municipalities, locating and hiring qualified police officers is a
> statewide problem.  Larger departments often have the different divisions
> that attract and keep younger officers.  Lathrup Village's quiet residential
> appeal for the most part does not attract younger police officer candidates.
> To cover for the likelihood of hiring police officers, this budget has
> accounted for a fully staffed police department.

(ECF No. 109-19, PgID 4893.)

In the ADEA context, to determine whether there is direct evidence of

discrimination, courts look at whether there is "evidence, if believed, [which] requires the

conclusion that age was the 'but for' cause of the employment decision." *Scheick*, 766 F.3d at 530.  This "inquiry includes both a predisposition to discriminate and that the employer acted on that predisposition." *Id.*  Direct evidence "does not require the fact finder to draw any inferences to reach that conclusion." *Sharp v. Aker Plant Servs. Group, Inc.*, 726 F.3d 789, 798 (6th Cir. 2013) (internal quotation marks and citation omitted).  "Discriminatory remarks by decision makers and those who significantly influence the decision-making process can constitute direct evidence of discrimination. But only the most blatant remarks, whose intent could be nothing other than to discriminate on the basis of age, satisfy this criteria." *Id.*  In *Sharp*, the Sixth Circuit found direct evidence of age discrimination where the supervisor had explained, after terminating an older employee and retaining a younger one, that "we're all going to retire and I had an opportunity to bring the next generation in, so that's what we decided to do." *Id.* at 799.  The Sixth Circuit described this as a "retrospective description of the decision-making process that led to the terminations." *Id.*

Here, even assuming *arguendo* that Defendant McKee was the decisionmaker with regard to the challenged employment decisions, the statements attributed to him as well as the relevant portion of the City's budget do not require a conclusion that unlawful age discrimination was the "but for" reason for Defendants' actions.  Unlike in *Sharp*, where the comment at issue was made in reference to the plaintiff's termination after the fact, Defendant McKee's comments were general statements that took place prior to the adverse acts at issue.  The evidence, viewed in the light most favorable to Plaintiffs, shows a general bias against older officers or a desire to hire younger officers but requires a factfinder to draw further inferences to connect those notions to the adverse

acts that took place later.  The evidence here is akin to "general, vague, or ambiguous comments" the Sixth Circuit has found do not constitute direct evidence.  *See Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 708 (6th Cir. 2008) (citing *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 524-25 (6th Cir. 2007) (statement made by supervisor that employee was "too old" to handle a particular account was not direct evidence that employee was terminated because of his age); *Rowan v. Lockheed Martin Energy Sys.*, 360 F.3d 544, 548-49 (6th Cir. 2004) (statements made by members of management about the general need to lower the average age of the workforce as well as a "stray" comment that "the older people should go, bring in some new blood" made years before the adverse decisions were not direct evidence of unlawful age bias)).  Because Plaintiffs have not submitted direct evidence of age discrimination, the Court will consider their age discrimination claims under the burden-shifting framework set forth in *McDonnell Douglas*.

## C.    Plaintiff Gorbe's Claims

Plaintiff Gorbe alleges his termination constituted unlawful age and disability discrimination in violation of the ADEA and ADA.  He also alleges he was terminated in retaliation for exercising his rights under the ADEA and the First Amendment of the United States Constitution.

### 1.    Plaintiff Gorbe's Age Discrimination Claim

Defendants argue Plaintiff Gorbe cannot establish a prima facie case of age discrimination, because he was not qualified for his position due to his inability to meet the attendance requirements of his job.  Defendants also argue that Plaintiff Gorbe's

desire to remain on sick leave with no definite return date is a legitimate, nondiscriminatory reason for his termination.

As a general matter, courts should "not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the prima facie case.  To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 574 (6th Cir. 2003).  "[T]he inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills." *Id.* at 576.  Thus, the Court will assume, without deciding, that Plaintiff can establish a prima facie case of age discrimination.  Plaintiff's inability to work "until further notice" does, however, serve as a legitimate, non-discriminatory reason for his termination. *See Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 407 (6th Cir. 2014).  The burden then shifts back to Plaintiff to show that this reason was pretextual.

Plaintiff Gorbe argues that Defendants' proffered reason did not actually motivate his termination.  He avers that the union's collective bargaining agreement shows that he could have remained on "physical or mental" leave for up to eighteen months.  The provision he points to, however, simply states that "[a]n employee shall forfeit his seniority rights" if he "is unable to return to work for eighteen (18) months due to physical or mental disability."  (ECF No. 109-31, PgID 5018-19).  And in fact, a separate provision of that same agreement sets forth that sick leave beyond three consecutive days is subject to verification, "including examination by a physician selected by the

City."  (ECF No. 102-8, PgID 3476.)  Here, a psychologist conducted an examination at the City's expense and found Plaintiff Gorbe fit for duty.  And while Plaintiff states that despite the letter sent to him by Defendant Armstrong giving him a return date, he was told by his union representative that Armstrong said he did not actually have to worry about returning to work, a pre-termination hearing was later conducted, during which Gorbe indicated that he was unable to return to work "until further notice."[4]  Under these circumstances, the Court finds Plaintiff has not demonstrated that Defendants' proffered legitimate, non-discriminatory reason was false.

Moreover, the comments allegedly made by Defendant McKee evincing a bias against older police officers are of little probative value here where there is no evidence that McKee was involved in the decision to terminate Gorbe.[5]  Plaintiff Gorbe's subjective belief that it was Defendant McKee who terminated him due to his age does not create a genuine issue of material fact as to pretext.  *See Barrett v. Whirlpool Corp.*, 556 F.3d 502, 519 (6th Cir. 2009) ("conclusory statements, subjective beliefs, or intuition cannot defeat summary judgment").  There is nothing else in the record that would support an inference that unlawful age discrimination was the real reason for his

---

[4] Plaintiff Gorbe also argues that the March 2016 letter from Defendant Armstrong acknowledging receipt of his doctor's note contradicts the statement in the termination letter that he removed himself from his duties as a police officer "without department approval."  Because Defendants have articulated Gorbe's inability to return to work without a definite return date as the legitimate, nondiscriminatory reason for his termination, not his prior actions, this purported inconsistency does not lead to an inference of pretext.

[5] Plaintiff Gorbe argues that a jury could find that it was McKee who terminated him but used Potter's name as a "cover up."  This assertion, however, appears to be based entirely on speculation.  Defendant Armstrong's testimony regarding his uncertainty as to why Gorbe was terminated does not lead to an inference that McKee, not Potter, is the one who terminated him.

termination.  And as Defendants argue, the demographics of the Lathrup Village police department, where 64% of the employees are over the age of 40, belie an inference of age discrimination.  (*See* ECF No. 102-3, PgID 3447.)  In sum, Defendants are entitled to summary judgment on Plaintiff Gorbe's age discrimination claim.

### 2.    Plaintiff Gorbe's Disability Discrimination Claim

Defendants argue Plaintiff Gorbe cannot establish a prima facie case of disability discrimination because he is not disabled.  Defendants also argue, as they did in relation to Plaintiff Gorbe's age discrimination claim, that he is not qualified to perform his job and his desire to remain on sick leave with no definite return date is a legitimate, nondiscriminatory reason for his termination.

Under the ADA, the term "disability" means, in relevant part, a physical or mental impairment that substantially limits one or more major life activities of an individual.  *See* 42 U.S.C. § 12102(1).  Major life activities include, but are not limited to, "[c]aring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working."  29 C.F.R. § 1630.2(i).

Plaintiff Gorbe avers that he is disabled due to "Post-Traumatic Stress Disorder," "Psychophysiological insomnia," and "Elevated Blood Pressure w/out diagnosis of Hypertension."  (*See* ECF No. 109-26, PgID 4971.)  Defendants argue that he is not disabled because during an evaluation which took place in August 2016, he admitted that he was not taking medication, was not seeking mental health treatment, and "felt good" as long as he was not working at Lathrup Village.  (ECF No. 102-10.)  Plaintiff

Gorbe has himself admitted that his anxiety was brought on by his job.  (*See, e.g.*, *id.*)
However, he also testified that he was unable to drive during the relevant time period
due to the medications he was taking, which made him drowsy and groggy.  (ECF No.
109-29, PgID 5004.)  Thus, the Court finds there is a question of fact as to whether
Plaintiff Gorbe suffered from a condition that "substantially limits" a major life activity.

Assuming Plaintiff Gorbe can demonstrate the remaining elements of his prima
facie case of disability discrimination, however, as discussed above, Defendants have
articulated a legitimate, nondiscriminatory reason for Plaintiff's termination, and Plaintiff
has not met his burden of showing this reason was false.  And there is no evidence in
the record that would give rise to an inference that unlawful disability discrimination was
the real reason for his termination.  Thus, Plaintiff has not shown there is a material
question of fact as to pretext in the context of his disability discrimination claim.

Plaintiff Gorbe did not bring a separate failure to accommodate claim but now
appears to argue that Defendants' failure to provide an accommodation for his disability
led to his termination.  An employee, however, bears the burden of proposing
reasonable accommodations.  *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974,
983 (6th Cir. 2011).  Here, Plaintiff Gorbe presented a doctor's note indicating that he
needed to remain on sick leave "until further notice."  The Sixth Circuit has held that
when "an employer has already provided a substantial leave, an additional leave period
of a significant duration, with no clear prospects for recovery, is an objectively
unreasonable accommodation."  *Walsh v. United Parcel Serv.*, 201 F.3d 718, 727 (6th
Cir. 2000); *see also Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir.
1998) ("Reasonable accommodation does not require the employer to wait indefinitely

for an employer's medical condition to be corrected."). And to the extent Plaintiff takes issue with Defendants not offering him light duty, he does not point to any evidence in the record that supports the contention that he requested this accommodation prior to his termination but it was denied. *See Judge*, 592 F. App'x at 407. In sum, Defendants are entitled to summary judgment on Plaintiff Gorbe's disability discrimination claim.

### 3.    Plaintiff Gorbe's Retaliation Claims

It is undisputed that Plaintiff Gorbe engaged in protected activity for purposes of his ADEA retaliation claim when he filed an EEOC charge on July 25, 2016 claiming he was suspended as a result of age discrimination. Defendants dispute, however, that Plaintiff Gorbe engaged in protected activity for purposes of his First Amendment retaliation claim. Defendants also argue that Plaintiff Gorbe cannot prove either one of his retaliation claims because there is no evidence that the individual who ultimately terminated him, City Administrator Potter, knew of his protected activity. And Defendants, once again, rely on Plaintiff Gorbe's inability to return to work "until further notice" as a legitimate, nonretaliatory reason for his termination.

The Court will assume, without deciding, that Plaintiff Gorbe can establish a prima facie case of ADEA retaliation. Defendants, however, have articulated a legitimate, nonretaliatory reason for Plaintiff Gorbe's termination and Plaintiff has not proven that this reason did not actually motivate his termination, as discussed above. Plaintiff Shargabian's testimony that Defendant McKee was "pissed" when he received the EEOC complaint is not sufficient to create a question of fact as to pretext where the record shows Plaintiff Gorbe was terminated by City Administrator Potter. And even if Plaintiff Gorbe engaged in protected activity under the First Amendment, an issue the

20

Court need not reach here, Defendants have shown that they would have taken the same action in the absence of any protected activity due to Plaintiff's inability to return to work indefinitely.  Thus, Defendants are entitled to summary judgment on both of Plaintiff Gorbe's retaliation claims.

### D.   Plaintiff Shargabian's Claims

Plaintiff Shargabian argues that his termination constituted unlawful age discrimination in violation of the ADEA.  He also avers that he was terminated in retaliation for exercising his rights under Title VII and the First Amendment.

### 1.   Plaintiff Shargabian's Age Discrimination Claim

Defendants argue that Plaintiff Shargabian cannot prove his prima facie case of age discrimination because he was replaced by someone older than him.  Defendants further argue that Plaintiff Shargabian's failure to complete and submit a background packet in a timely fashion constitutes a legitimate, nondiscriminatory reason for his termination.

Defendants have presented evidence that Plaintiff Shargabian was replaced with Theresa Knoll, who is more than six years older than him.  (ECF No. 102-3, PgID 3447.)  Plaintiff Shargabian does not dispute this point.  And he has not shown that he was otherwise treated differently than a similarly situated individual who is younger than him.  While Plaintiff Shargabian testified that he believes two other reserve officers had not completed the same background packet but were not terminated, he has not presented any evidence of this.  Nor has he set forth the age of his comparators or demonstrated that they were similarly situated to him.  Because Plaintiff Shargabian has not

established a prima facie case of age discrimination, summary judgment in favor of Defendants is appropriate on this claim.

### 2.      Plaintiff Shargabian's First Amendment Retaliation Claim

Defendants argue that Plaintiff Shargabian did not engage in constitutionally protected speech.  In determining whether a public employer has violated the First Amendment by firing a public employee for engaging in speech, the court must first decide whether the relevant speech touches "on a matter of public concern." *Scarbrough*, 470 F.3d at 255 (internal quotation marks and citation omitted).  The Supreme Court has defined "public concern" as speech "relating to any matter of political, social, or other concern to the community."  *Connick v. Myers*, 461 U.S. 138, 146 (1983).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Id.* at 147-48.  "In general, speech involves matters of public concern when it involves issues about which information is needed or appropriate to enable the members of society to make informed decisions about the operation of their government."  *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001) (internal quotation marks and citation omitted).  If the speech relates to a matter of public concern, the Court then applies the *Pickering* balancing test "to determine if the employee's free speech interests outweigh the efficiency interests of the government as an employer."  *Scarbrough*, 470 F.3d at 255.

Here, the record is unclear as to the exact content of the allegedly protected speech.  Plaintiff Shargabian testified, in relevant part, as follows:

> Q: Now, one of the other claims you're making in this case is you were retaliated against because you told certain things to Gorbe and Rucker about McKee, right?
> A: Correct.
> Q: And the things that you claim to have them were that – the statement about him getting rid of old guys and hiring young guns, right?
> A: Uh-huh.
> Q: Yes?
> A: Yes.
> Q: The other thing is that I don't think a black guy being successful in Lathrup Village?
> A: Correct.

(ECF No. 109-8, PgID 4501.)  While Plaintiff Shargabian also stated in his affidavit that he heard Defendant McKee refer to certain African-American police officers as "ghetto," "hood rat," "lazy," and "idiot" and mouth the "n-word," (ECF No. 109-2, PgID 4299), he does not point to any evidence that indicates these particular comments were also relayed to Plaintiffs Gorbe and Rucker or any other co-workers.  Instead, Plaintiff Shargabian makes the conclusory statement that he "spoke out about the discrimination and retaliation that [McKee] engaged in and committed."[6]  (*Id.* at PgID 4301.)

The Court finds that Plaintiff's communications to his co-workers are not of public concern.  The content, form, and context of his statements do not indicate that he made them as a citizen airing public concerns, but rather as an employee discussing matters of personal interest with a co-worker.  *See McMurphy v. City of Flushing*, 802 F.2d 191,

---

[6] Plaintiff Gorbe allegedly included some of the information he heard from Plaintiff Shargabian in his emails to city administration and city council.  Defendants note that a review of those communications reveals that Plaintiff Shargabian is not referenced by name.  Plaintiff Gorbe does indicate in his emails that he received certain information from "other officers."  However, most of that information relates to what was said about Gorbe in his absence or indicates that those officers agreed with his version of events.  For example, other officers allegedly informed Gorbe that McKee said he was going to get Gorbe's pay taken away; Pam Bratschi blamed Gorbe drama for her not becoming city manager; and McKee wanted to write Gorbe up for not taking a report of larceny at the local high school and Armstrong disagreed.  (ECF No. 102-23.)

197-98 (6th Cir. 1986) (matters of interest only to employees, such as personal vendettas, do not enjoy First Amendment protection).  The primary "focus," "point," or "communicative purpose" of his speech was to air his grievances regarding how Defendant McKee was running the police department.  *Cf. Farhat v. Jopke*, 370 F.3d 580, 593 (6th Cir. 2004) (finding letters sent by employee were not matters of public concern because "the primary focus, point, or communicative purpose" of those letters "was his own personal beef with the union and the school district concerning his deteriorating job situation, and his references to collusion or corruption were passing references that were incidental to the message conveyed").  That Plaintiff Gorbe incorporated information he received from Plaintiff Shargabian in complaints he sent to the city administration does not render Plaintiff Shargabian's speech of public concern.[7] And to the extent Plaintiff Shargabian's comments can be construed as making a vague allegation of racism, the Court notes that he made these complaints in private conversations with a co-worker and did not report any concerns to city administration or his supervisors prior to his termination.

Because the Court finds that Plaintiff Shargabian's speech does not involve matters of public concern, there is no need to balance his interests in speaking freely against the interests of his government employer.  *See Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 892-93 (6th Cir. 2003) ("If a plaintiff's speech does not address a matter of public concern, no further inquiry is necessary.").  In sum, Plaintiff Shargabian's First Amendment retaliation claim is dismissed.

---

[7] The Court does not reach the issue of whether Plaintiff Gorbe's emails and communications themselves constitute protected speech.

### 3.    Plaintiff Shargabian's Title VII Retaliation Claim

Defendants argue that Plaintiff Shargabian did not engage in protected activity for purposes of his Title VII retaliation claim.  Defendants also point to Plaintiff's failure to complete a background packet as a legitimate, nonretaliatory reason for his termination.

Generally, complaining about allegedly unlawful practices may constitute "opposing" conduct protected by Title VII.  *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).  However, "a vague charge of discrimination . . . is insufficient to constitute opposition to an unlawful employment practice."  *Booker v. Brown & Williamson Tobacco Co., Inc.*, 879 F.2d 1304, 1313 (6th Cir. 1989).  In *Booker*, the court found that the plaintiff had failed to state a cause of action under Title VII when his act of opposition involved "contesting the correctness of a decision made by his employer," rather than "contesting any unlawful employment practice."  *Id.*  The court found that a suggestion that the charges brought against the plaintiff were a result of "ethnocism [sic]" was too vague to constitute opposition to an unlawful employment.  *Id.*  In *Fox*, 510 F.3d at 591-92, the plaintiff threatened to sue, but he alleged only that management was "out to get him" and he was unfairly denied a promotion.  The court found this vague charge insufficient to constitution opposing conduct under the ADEA, noting that "[i]n order to receive protection under the ADEA, a plaintiff's expression of opposition must concern a violation of the ADEA."[8]  *See id.*

---

[8] While *Fox* concerned the ADEA, not Title VII, the Sixth Circuit relied on cases construing Title VII, noting that the anti-retaliation provisions of the two statutes are similar in all relevant expenses.  *See Fox*, 510 F.3d at 591.

Here, the only complaints allegedly made by Plaintiff Shargabian that may relate to a protected status under Title VII stem from relaying Defendant McKee's purported comment regarding his opinion that "a black guy" cannot be successful in Lathrup Village, as well as his use of racially derogatory terms, to his co-workers. However, suggesting that a supervisor may be racist is not the same as complaining about an unlawful employment practice. See *Booker*, 879 F.2d at 1313. And to the extent such comments may be construed as doing so, they are vague. Thus, even assuming that a private conversation with a co-worker may under certain facts and circumstances constitute opposing conduct, the Court finds that Plaintiff Shargabian is not entitled to the protections of Title VII. *See id.* (noting that if an employee is allowed to invoke the protections of Title VII by making a vague charge of discrimination, "every adverse employment decision by an employer would be subject to challenge under either state or federal civil rights legislation"). Because Plaintiff Shargabian did not engage in protected activity under Title VII, he cannot establish a prima facie case of Title VII retaliation and Defendants are entitled to summary judgment on this claim.

### E.    Plaintiff Rucker's Claims

Plaintiff Rucker brings race discrimination and retaliation as well as age discrimination claims. As a general rule, a plaintiff alleging discrimination or retaliation "cannot bring claims in a lawsuit that were not included in his EEOC charge." *See Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010). Here, Plaintiff Rucker filed four separate EEOC charges. The first three charges allege race discrimination due to the denial of a promotion and race discrimination and retaliation due to having to work light duty, being required to attend training, and a three-day

suspension.  (ECF No. 102-41.)  The fourth charge alleges race and age discrimination as well as retaliation due to being "abruptly discharged."  (*Id.* at PgID 4147.) Defendants argue that the claims in the fourth charge fail because they are not based on an adverse employment action.  Defendants believe they are entitled to summary judgment on the remaining claims to the extent these claims are based on an adverse employment act, because Plaintiff has not demonstrated that he was treated differently from similarly situated employees or that Defendants' proffered legitimate, non-discriminatory reasons were pretextual.

### 1.    Alleged Adverse Acts

While Plaintiff Rucker complained in his EEOC charges that he was required to work light duty and attend training, there is no dispute that these are not adverse employment acts.  And both parties agree that the failure to promote and a three-day suspension are adverse acts.  The parties disagree over whether Plaintiff's resignation, which he describes as being "abruptly discharged," constitutes a constructive discharge.

Constructive discharge requires showing that (1) the employer deliberately created intolerable working conditions, as perceived by a reasonable person; and 2) the employer did so with the intention of forcing the employee to quit.  *Logan v. Denny's Inc.*, 259 F.3d 558, 568-69 (6th Cir. 2001).  Constructive discharge is hard to prove and "does not protect employees who leave their job in apprehension that conditions may deteriorate later."  *Groening v. Glen Lake Community Schools*, 884 F.3d 626, 630 (6th Cir. 2018) (internal quotation marks and citation omitted).

Here, Plaintiff does not allege that he faced any of the work conditions the Sixth Circuit has stated "suggest an objectively intolerable workplace," such as "demotion,

reduction in salary, badgering, harassment, humiliation, and sexual assault."  *See*

*Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 814 (6th Cir. 2020) (noting that

constructive discharge requires a finding "that the plaintiff's work conditions were indeed

hellish, or at least close to it").  Instead, Plaintiff argues that Defendant McKee's

"relentless pursuit of discipline" compelled his resignation.  The record does not support

Plaintiff's suggestion that the discipline he faced was "objectively intolerable."  Nor does

Plaintiff cite to any caselaw that supports his contention that discipline alone can satisfy

the high burden of proving a constructive discharge.  Because Plaintiff's resignation

does not constitute an adverse employment action, Defendants are entitled to summary

judgment on his race and age discrimination claims stemming from his resignation.

This leaves Plaintiff Rucker with a race discrimination claim based on the failure to

promote and race discrimination and retaliation claims based on a three-day

suspension.[9]

### 2.    Purported Direct Evidence of Race Discrimination

Plaintiff Rucker argues that there is direct evidence of race discrimination in this

case.  As discussed above, however, direct evidence is evidence that compels a

conclusion that the adverse employment action at issue was a result of unlawful race

discrimination.  Here, while there is testimony regarding racially derogatory language

allegedly used by Defendant McKee, it is unclear when most of those statements were

made or to whom they were directed.  And while there is testimony that indicates

---

[9] To the extent Plaintiff's pleadings can be construed as bringing a claim based
on his first termination or an age discrimination claim based on the failure to promote
and suspension, Plaintiff Rucker did not exhaust his administrative remedies with regard
to these claims and they are therefore dismissed.  *See Younis*, 610 F.3d at 361.

Defendant McKee allegedly referred to Plaintiff Rucker using the "n-word" in August

2014, this incident took place approximately two years before any of the adverse

employment actions at issue here.  *See Blair*, 505 F.3d at 524-25 (statement made by

supervisor that employee was "too old" to handle a particular account was not direct

evidence that employee was later terminated because of his age).  Thus, the Court will

analyze Plaintiff Rucker's claims under the burden-shifting framework set forth in

*McDonnell Douglas*.

### 3.    Race Discrimination Claim Stemming from Failure to Promote

It is undisputed that Plaintiff Rucker was eligible for the promotion to sergeant

after his position was reinstated by the arbitrator and he was able to complete the

examination.  Defendants argue, however, that there is a legitimate, nondiscriminatory

reason for their failure to promote Plaintiff Rucker.  More specifically, Defendants aver

that there was no longer a sergeant position available at the time due to budgetary

constraints.  However, Plaintiff points to uncertainty in the testimony as to who made

that decision that raises a question to fact as to whether this reason had a basis in fact

or actually motivated the decision.[10]   And while there is no evidence that Defendant

McKee, the only person who is alleged to have made racially insensitive remarks, was

involved in the decision not to promote Plaintiff Rucker, viewing the record in the light

most favorable to Plaintiff and drawing all reasonable inferences in his favor, the Court

---

[10] Defendants aver that then city administrator Baumgarten made the decision that the City was unable to fund the sergeant position.  However, his testimony does not eliminate the possibility that others were involved in development of the budget.  (*See* ECF No. 102-33, PgID 3989.)  And Plaintiff Shargabian testified that City treasurer Pamela Bratschi told him something to the effect of "I make the budget and if I say it's in the budget [sic], and I say it's not in the budget so he's not getting the sergeant position."  (ECF No. 109-8, PgID 4518.)

finds there is a question of fact as to pretext.  Thus, Plaintiff Rucker's Title VII race

discrimination claim based on the failure to promote survives this motion.[11]

### 4. Race Discrimination and Retaliation Claims Stemming from Three-Day Suspension

Defendants argue there is a legitimate, nondiscriminatory reason for Plaintiff

Rucker's three-day suspension that took place in July 2017.  More specifically,

Defendants note that Plaintiff Rucker was a no call/no show for his shift.  (ECF No. 102-

35, PgID 4107.)  Plaintiff Rucker argues that this reason was a pretext for unlawful race

discrimination and retaliation.  However, the only argument he advances in this regard

is that a suspension for this type of violation was not consistent with the use of

progressive discipline.  Defendants note, however, that Plaintiff had violated this policy

in the past and had previously received a written reprimand for doing so.  The Court

finds that Plaintiff has not raised a material question of fact as to pretext with regard to

the claims stemming from this suspension.  Thus, Defendants are entitled to summary

judgment on these claims.

## IV. Conclusion

For the above-stated reasons, Defendants' motion for summary judgment is

GRANTED IN PART and DENIED IN PART.  The only claim that survives this motion is

Plaintiff Rucker's Title VII discrimination claim based on the failure to promote.

Plaintiffs' remaining federal claims are dismissed with prejudice.

---

[11] To the extent Plaintiff brings this claim against Defendants Armstrong and McKee in their individual capacities, the Court notes there is no personal or individual liability under Title VII.  *See Wathen v. Gen. Electric Co.*, 115 F.3d 400, 405 (6th Cir. 1997).

SO ORDERED.

s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: March 31, 2021

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 31, 2021, by electronic and/or ordinary mail.

s/Lisa Bartlett
Case Manager